UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

FENF, LLC,

        Plaintiffs,

v.

SHENZHEN FROMUFOOT, LTD. AND
FROMUFOOT US INC.,

        Defendants.
_____/

Case No. 16-12616

SENIOR U.S. DISTRICT JUDGE
ARTHUR J. TARNOW

U.S. MAGISTRATE JUDGE
MONA K. MAJZOUB

**ORDER GRANTING PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT [16] AND ADDRESSING OTHER RELIEF**

Plaintiff FenF, LLC, filed a Complaint [1] on July 13, 2016 against Defendants Shenzhen Fromufoot Co., Ltd. and Fromufoot U.S. Inc.,[1] alleging patent infringement of the U.S. Patent Nos. 9,138,616 ("the 616 Patent") and 9,387,359 ("the 359 Patent") in violation of 35 U.S.C. § 271, unfair competition in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125, false designation of origin or sponsorship in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125, and copyright infringement of registered copyrights, Nos. VA0002001635 and VA0002001636 ("the 635 and 636 copyrights"). Since the commencement of this lawsuit, Defendant has not retained counsel; no Notice of Appearance by an

---

[1] Plaintiff collectively refers to these defendants as FromUFoot. Shenzhen FromUFoot is a company organized and existing under the laws of China. Its place of business is located in China. FromUFoot U.S. is a subsidiary of Shenzhen. (Am. Compl. at ¶¶ 2-3).

attorney has been filed, nor has Defendant attempted to participate in the proceedings in any way.[2]

On June 19, 2017, the Court entered an Order Granting Plaintiff's Motion for Extension of Time to Serve Defendant [10]. Approximately five months later, the Court entered an Order Directing Plaintiff to Show Cause Why the Case Should Not Be Dismissed for Failure to Prosecute [11].

Plaintiff filed a joint Response and Motion to Deem that Defendant FromuFoot Has Been Served [12] on January 2, 2018. Plaintiff explained that its multiple attempts at serving Defendant have been futile. Plaintiff notes that it has fully complied with the requirements of the Hague Convention and that the Chinese Central Authority has refused to effectuate service on Defendant.

On February 22, 2018, the Court entered an Order [14] vacating its previous show cause order, granting Plaintiff's Motion to Deem Defendant as Served, and directing Defendant to show cause why default judgment should not be entered. Defendant failed to respond by the May 1, 2018 deadline. Plaintiff thereafter filed a Motion for Default Judgment [16], seeking entry of default[3] and default judgment

---

[2] According to exhibits attached to one of Plaintiff's motions, it appears that Plaintiff has been in touch with someone from Shenzhen Fromufoot via email. *See* Dkt. 9-6, 9-8.

[3] Plaintiff filed a Request for Clerk's Entry of Default [19] on June 11, 2018. Clerk's Entry of Default [20] was entered the following day.

against Defendant, along with attorney fees, costs, a permanent injunction, and order for dispossession.

The Court entered a Permanent Injunction Order [21] on July 12, 2018. This Order resolves the remaining relief to which Plaintiff is entitled.

ANALYSIS

**I.     Default judgment against Defendant is warranted.**

Defendant has failed to appear or otherwise plead in this action. Because a Clerk's Entry of Default was requested and entered, Plaintiff's well-pleaded allegations are deemed admitted. *Ford Motor Co. v. Cross*, 441 F.Supp.2d 837, 846 (E.D. Mich. 2006).

**A. Patent Infringement**

Patent infringement occurs when a person "without authority makes, uses or sells any patented invention, within the United States . . . during the term of the patent." 35 U.S.C. § 271(a). The Court undertakes a two-step analysis in evaluating infringement. First, the Court must determine the meaning and scope of the asserted claims. *See Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 976 (Fed. Cir. 1995). Then, the Court compares "the properly construed claims to the device accused of infringing." *Id.*

Plaintiff has sufficiently established that Defendant infringed the '616 and '359 patents "by making, using, offering to sell, and/or selling" a product that is

virtually identical to Plaintiff's YogaToes® GEMS product. (FAC ¶ 26). Defendant's product is a foot therapy and toe-aligning device that incorporates a similar structure as the GEMS product. Manufacturing a virtually identical product, and then advertising that product on the Internet and in catalogs, constitutes deliberate and willful infringement of Plaintiff's patent rights.

### B. Infringement and false/misleading advertising

#### 1. Trade Dress Infringement

"'Trade dress' refers to 'the image and overall appearance of a product.' It embodies 'that arrangement of identifying characteristics or decorations connected with a product, whether by packaging or otherwise, [that] make[s] the source of the product distinguishable from another and . . . promote[s] its sale.'" *Ferrari S.P.A. Esercizio Fabriche Automobili E Corse v. Roberts*, 944 F.2d 1235, 1239 (6th Cir. 1991) (internal quotations omitted). Courts have determined that trade dress includes the following things:

> the cover of a book, a magazine cover design, the use of a lighthouse as part of the design of a gold hole, the "G" shape of a Gucci watch, a combination of features of a folding table, a fish-shaped cracker, the "Marlboro Man" western cowboy motif, and . . . the layout and appearance of a mail-order catalog.

*Abercrombie & Fitch Stores, Inc. v. American Eagle Outfitters, Inc.*, 280 F.3d 619, 629 (6th Cir. 2002) (citing *Tools USA & Equip. Co. v. Champ Frame Straightening Equip.*, 87 F.3d 654 (4th Cir. 1996)).

To establish liability for trade dress infringement, Plaintiff must show: 1) "that the trade dress in question is distinctive in the marketplace, thereby indicating the source of the good it dress, 2) that the trade dress is primarily nonfunctional, and 3) that the trade dress of the competing good is confusingly similar." *Id.* (citing *Wal-Mart Stores, Inc. v. Samara Bros., Inc.*, 529 U.S. 205, 210 (2000)).

The YogaToes® GEMS foot therapy product "includes upstanding posts made of an elastic material." (FAC ¶ 9). Each post "has a faceted gemstone handle at a free end thereof." *Id.* Plaintiff "has acquired value, name and brand recognition, and goodwill in the use of faceted gemstone handles." *Id.* at ¶ 11. These handles "are non-functional and have acquired secondary meaning through long and sustained use in interstate commerce and through substantial advertising, promotion, and sales." *Id.* at ¶ 35.

Plaintiff obtained Trademark Registration No. 5,098,981 ("the 981 registration") for the trade dress for the GEMS foot therapy product on December 13, 2016. *See* Dkt. 16-2. "Registration of a mark . . . creates a rebuttable presumption that a trademark is valid, that is, either inherently distinctive or descriptive with secondary meaning, and therefore, protectable under federal trademark law." *Leelanau Wine Cellars, Ltd. v. Black & Red, Inc.*, 502 F.3d 504, 513 (6th Cir. 2007) (15 U.S.C. § 1115(a)).

Plaintiff alleges that Defendant manufactures its own foot therapy product that includes the upstanding elastic posts and faceted gemstone handles. Defendant's product is an exact copy of Plaintiff's GEMS product. (FAC ¶ 16). Plaintiff further alleges that Defendant imports and sells its product, in direct competition with Plaintiff's. *Id.* at ¶¶ 17-19. These facts are sufficient to show that the GEMS product's trade dress is distinctive in the marketplace, is primarily nonfunctional, and that Defendant's product is confusingly similar.

### 2. Trademark Infringement

In the Amended Complaint [8], there is no count explicitly titled "trademark infringement." Rather, Plaintiff labels Count V as "federal unfair competition." This is inconsequential – "[u]nder the Lanham Act § 43(a), the ultimate test is whether the public is likely to be deceived or confused by the similarity of the marks . . . Whether we call the violation infringement, unfair competition or false designation of origin, the test is identical – is there a 'likelihood of confusion?'" *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 780 (1992) (quoting *New West Corp. v. NYM Co. of California, Inc.*, 595 F.2d 1194, 1201 (9th Cir. 1979)). The Court must determine "whether the mark is protectable, and if so, whether there is a likelihood of confusion as a result of the would-be infringer's use of the mark." *Wysong Corp. v. M.I. Industries*, 412 F.Supp.2d 612, 634 (E.D. Mich. 2005) (quoting *Tumblebus Inc. v. Cranmer*, 399 F.3d 754, 761 (6th Cir. 2005)).

Plaintiff obtained Trademark Registration No. 5,040,435 ("the 435 registration") for the GEMS mark on September 13, 2016. *See* Dkt. 16-3. As explained previously, this is *prima facie* evidence that Plaintiff's trademark is valid. *Leelanau Wine Cellars, Ltd.*, 502 F.3d at 513.

Plaintiff alleges that Defendant has used, without Plaintiff's permission, the "Yoga Gems Toe Separator" mark "in connection with the marketing, advertising, promotion, and sale" of Defendant's product. (FAC ¶ 49). Given that Plaintiff and Defendant manufacture the same products – corrective toe spacers and separators – Defendant's improper use of the GEMS mark constitutes trademark infringement and is likely to confuse and mislead consumers.

### 3. False or Misleading Advertising

To establish false or misleading advertising under the Lanham Act, Plaintiff must prove:

(1) the defendant has made false or misleading statements of fact concerning his product or another's;
(2) the statement actually deceives or tends to deceive a substantial portion of the intended audience;
(3) the statement is material in that it will likely influence the deceived consumer's purchasing decisions;
(4) the advertisements were introduced into interstate commerce; and
(5) there is some causal link between the challenged statements and harm to the plaintiff.

*American Council of Certified Podiatric Physicians and Surgeons v. American Board of Podiatric Surgery, Inc.*, 185 F.3d 606, 613 (6th Cir. 1999).

Plaintiff alleges that Defendant solicits business in the U.S. in two ways: first, by distributing a catalog that contains Plaintiff's copyrighted photos; and second, by advertising its product on the Internet. (FAC ¶¶ 20, 23). These uses are misleading because they are likely to make consumers think that Plaintiff's product is Defendant's product, or vice versa. In addition, Plaintiff alleges that Defendant is trying to pass off Plaintiff's copyrighted photos of the GEMS foot therapy product as photos of Defendant's product. These allegations establish that Defendant's practices have caused harm to Plaintiff's business, profit, reputation, goodwill, and diluted the strength of the GEMS foot therapy product.

**C. Copyright infringement**

"A claim of copyright infringement requires proof of '(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original.'" *ATC Distribution Group, Inc. v. Whatever It Takes Transmissions & Parts, Inc.*, 402 F.3d 700, 705 (6th Cir. 2005) (quoting *Feist v. Publ'ns, Inc. v. Rural Tel Serv. Co.*, 499 U.S. 340, 361 (1991)).

Plaintiff has established the elements of a copyright infringement claim. Plaintiff alleges that Defendant has infringed its registered copyright by including unauthorized reproductions of Plaintiff's copyrighted photos in Defendant's catalogs. It appears that Defendant has distributed two catalogs – one in 2016, the other in 2018 – that contain exact reproductions of the copyrighted '635 photo.

Additionally, Plaintiff alleges that Defendant advertised on the Internet for a "Yoga Gems Toe Separator"; the advertisement included a reproduction of the '636 copyrighted photo. These facts demonstrate that Defendant violated Plaintiff's rights by copying, reproducing, and publicly displaying the copyrighted photos.

II. **Attorney fees and costs.**

Under the Lanham Act, the Court "in exceptional cases may award reasonable attorney fees to the prevailing party." 15 U.S.C. § 1117(a). Courts in this district have found cases to be exceptional – and deserving of attorney fees – where the defendant willfully infringed on a plaintiff's trademark. *See, e.g.*, *Microsoft Corp. v. Compusource Distributors, Inc.*, 115 F.Supp.2d 800, 812 (E.D. Mich. 2000); *Ford Motor Co.*, 441 F.Supp.2d at 854. The Sixth Circuit has similarly recognized that "exceptional cases . . . include cases of willful infringement." *Taylor v. Thomas*, 624 Fed. Appx. 322, 328 (6th Cir. 2015) (internal quotations omitted).

Defendant has failed to answer the complaint or enter any pleading in this matter. Because Plaintiff has received an entry of default, Defendant is deemed to have admitted the willful violations alleged in the complaint. *See Ford Motor Co.*, 441 F.Supp.2d at 846.

Plaintiff seeks $43,319 in attorney's fees and costs. In support of its request, Plaintiff has submitted the sworn declaration of its counsel, Richard W. Hoffmann, along with time records depicting the hours spent on this case. *See* Dkt. 17. Mr. Hoffman worked on this case with co-counsel Michael Druzinski and Colleen Shovlin. Mr. Hoffmann has nearly 30 years of experience in intellectual property litigation. His normal hourly rate was $400 in 2016 and $425 in 2017. His normal hourly rate in 2018 is $400. Mr. Druzinski's normal hourly rate was $315 in 2016 and $325 in 2017. Ms. Shovlin's normal hourly rate in 2018 is $255. Counsel submits that the work they performed on this case is valued at $36,649.00, excluding costs and expenses.

Plaintiff also seeks costs in the amount of $6,670. According to the Bill of Costs [17-5], Plaintiff spent $400 on court filing fees, $1,090 for service of the summons and subpoena, and $5,180 on translating various court documents.

## Conclusion

Based on the factual allegations in the complaint, the Court finds that Defendant's actions constitute copyright, patent, trade dress, and trademark infringement, as well as false and misleading advertising. Plaintiff is therefore entitled to default judgment. Accordingly,

**IT IS ORDERED** that Plaintiff's Motion for Default Judgment [16] is **GRANTED**.

**IT IS FURTHER ORDERED** that Plaintiff is entitled to attorney fees in the amount of $36,649.00 and $6,670.00 in costs.

**SO ORDERED**.

Dated: August 6, 2018

s/Arthur J. Tarnow
Arthur J. Tarnow
Senior United States District Judge